UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6:25-CR-00021-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| TOMAS DAUKSYS, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Recommended Disposition ("Recommendation") issued by United States Magistrate Judge Hanly A. Ingram, [R. 55], which addresses Defendant Tomas Dauksys's Motion to Suppress, [R. 46]. The United States responded to the Motion to Suppress, [R. 52], and Dauksys replied, [R. 54]. On October 20, 2025, the Magistrate Judge issued his Recommended Disposition, recommending that the Motion to Suppress be denied. [R. 55]. Dauksys filed timely objections to the Recommended Disposition. [R. 60]. Therefore, the motion is ripe and ready for review. For the reasons that follow, the Court will adopt the Recommended Disposition as the opinion of this Court, overrule Dauksys's objections, and deny Dauksys's Motion to Suppress.

**I.    BACKGROUND**

On December 4, 2023, Magistrate Judge Jeffrey T. Gilbert of the Northern District of Illinois (Eastern Division, Chicago) issued a search warrant, number 23-M-01079. [R. 46-3]. The warrant authorized the search of "2300 Wisconsin Avenue, Unit 301, Downers Grove, Illinois 60515." *Id.* at 1. This storage unit and adjacent office space ("Subject Premises") was the location

of the ShipUx business and is the same location described in paragraph one of the Indictment. *See* [R. 1, p. 1]. The search was to locate and seize "[e]vidence, instrumentalities, and fruits" of mail fraud, wire fraud, and interstate transportation of stolen goods in violation of sections 1341, 1343, and 2314 of Title 18. [R. 46-3, p. 4].

FBI Special Agent Jordan Reynolds of Memphis, Tennessee, submitted the affidavit in support of the search warrant, which is currently under seal. [R. 46-2]. The affidavit spans forty-one pages and details the FBI's extensive investigation—beginning in 2019— into a "'reshipping scheme' involving the consolidation and reshipping of stolen or fraudulently obtained merchandise." *Id.* at 3. As the affidavit describes,

> [A] reshipping scheme generally consists of a network of conspirators who "hire" unsuspecting persons to receive or pick up packages containing high-value goods that have been either 1) stolen, 2) purchased using stolen credit cards/accounts, or 3) diverted while *en route* to their intended destinations through manipulation of tracking systems, social engineering, or other means; the "employees" hired by the conspirators then forward the goods to an address under the control of the conspirators. The "employees" who will receive these goods are frequently hired through websites and never meet their "employers." They are told they will work as package inspectors, logistics managers, quality control specialists, or something similar. "Employees" are instructed to receive packages at their homes, open the packages and remove all shipping labels, invoices, and any documents that identify a purchaser, repackage the items, affix new shipping labels (sometimes, counterfeit) obtained from an online site provided by the conspirators, and send the items to new locations as instructed. Merchandise is generally consolidated in various centralized locations or warehouses before being disposed of by the conspirators.

*Id.* at 5–6.

The affidavit explained that the target location was one of at least five storage units believed to be used to "store and subsequently dispose of the stolen or fraudulently obtained merchandise" in the fraud conspiracy. *Id.* at 3. The FBI interviewed over twenty individuals who all claimed "that they were hired by various third party companies to receive merchandise at their home address, unpack the merchandise, repackage it using separate labels provided by the

respective third party company, and subsequently ship the merchandise to the **Subject Premises**, or to the four other storage units." *Id.* at 3–4 (alteration in original). These individuals were never paid, and they were never able to reestablish contact with their purported employers. *Id.* at 4. The registrations or IP addresses associated with many of these supposed "businesses" or "supervisors" traced back to locations in other countries. *See, e.g.*, *id.* at 12 (domain name registration tied to Limassol, Cryprus); *id.* at 18 (IP addresses of "supervisors" tracing back to Moscow, Russia and Kiev, Ukraine).

The affidavit alleges that 3,464 FedEx parcels were shipped to the Subject Premises between October 28 and November 28, 2023, including 167 parcels on November 28 alone. *Id.* at 4. During the course of the investigation, the Subject Premises had been on the FBI's radar as one of two addresses that appeared regularly in this "reshipping scheme," the other being an address in Sacramento, California. *Id.* at 5. Between January 1, 2019, and October 31, 2019, both the Subject Premises and the Sacramento location received an approximate combined 11,867 packages through FedEx. *Id.* at 10. FedEx records show that shipments made to these locations were tracked by IP addresses based in Russia and Moldova. *Id.* at 25–26. A warranted search of the Sacramento location yielded approximately fifty-five "individually serialized electronic devices without any visible shipping labels." *Id.* at 31.

On September 8, 2025, Dauksys filed his Motion to Suppress. [R. 46]. The motion is accompanied by the warrant application, [R. 46-2 (sealed)], the warrant and attachments, [R. 46-3], the property receipt, [R. 46-4], and a printout of the ShipUx website, [R. 46-5]. In his motion, Dauksys argues that the search of the Subject Premises violated his Fourth Amendment rights. [R. 46, p. 1]. In particular, Dauksys contends that the search warrant lacked sufficient probable cause to search the Subject Premises. *See generally id.* at 10–17. Specifically, Dauksys argues that

the affidavit failed to establish a sufficient nexus between the alleged crime and the Subject Premises. *Id.* at 10. Dauksys asks that the Court suppress "any evidence and / or incriminating statements made by the defendant obtained by the Government relating and / or subsequent to a search of the Defendant's business." *Id.* at 1. The United States responded in opposition to the motion, [R. 52], and Dauksys replied, [R. 54]. This matter was submitted to Judge Ingram who thereafter issued a Recommendation, recommending that the Motion to Suppress be denied. [R. 55]. Dauksys filed timely objections to the Recommendation. [R. 60]. The Court now addresses the motion.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(A), a district court judge may designate a Magistrate Judge to submit proposed findings of fact and recommendations for the disposition of certain motions, including motions to suppress evidence. Within fourteen days of being served a copy of that recommended disposition, any party may file written objections to the Magistrate Judge's proposed findings and recommendation. § 636(b)(1)(C). This Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection, which preserves the issue for appeal, "explains and cites specific portions of the report which counsel deems problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (citation modified) (internal quotation marks omitted) (quoting *Smith v. Chater*, 121 F.3d 709 (Table), 1997 WL 415309, at *2 (6th Cir. 1997)). "[A]n objection to an R&R is not meant to be simply a vehicle to rehash arguments set forth in the petition, and the Court is under no obligation to review de novo objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs." *Dundee v. Univ. Hosps. Corp*, No. 1:19-CV-

01141, 2020 WL 511520, at *1 (N.D. Ohio Jan. 31, 2020) (citing *Howard v. Sec. of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Roberts v. Warden, Toledo Corr. Inst.*, No. 1:08-CV-00113, 2010 WL 2794246, at *7 (S.D. Ohio July 14, 2010) ("The Court is under no obligation to review de novo objections that are merely perfunctory or an attempt to have the Court reexamine the same arguments set forth in the original petition."); *McClain v. Hanna*, No. 2:19-CV-10700, 2019 WL 7288768, at *2 (E.D. Mich. Dec. 30, 2019) ("[O]bjections to a report and recommendation should not be used as a vehicle to rehash arguments previously made by the objecting party."). In prohibiting "general objections" to magistrates' reports, the Sixth Circuit stated that

> [a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Howard*, 932 F.2d at 509. Ultimately, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1)(C).

## III.    ANALYSIS

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "The text of the [Fourth] Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set

out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011). These requirements apply to warrants issued in federal and state courts. *United States v. Helton*, 35 F.4th 511, 517 (6th Cir. 2022).

Federal Rule of Criminal Procedure 12(b)(3)(C) permits defendants to file pretrial motions to suppress evidence, which are "appropriate when evidence sought to be introduced in a criminal case is alleged to have been unlawfully obtained." *United States v. Salazar*, No. 1:14-CR-00029-GNS-1, 2016 WL 2903282, at *1 n.1 (W.D. Ky. May 18, 2016) (internal quotation marks and citations omitted); *see also United States v. Nailor*, 683 F. Supp. 3d 678, 682 (E.D. Mich. 2023) (citing Fed. R. Crim. P. 12(b)(3)). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). Should a court find that evidence was unlawfully obtained, "that evidence collected in violation of the Fourth Amendment may be excluded from the criminal trial of the victim of the unlawful search." *United States v. Novak*, 814 F. App'x 1009, 1012 (6th Cir. 2020) (citing *Mapp v. Ohio*, 367 U.S. 643, 648 (1961)). This is known as "the exclusionary rule." *See id.*

The Supreme Court has explained that, so long as the magistrate judge had a "substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983). When determining whether an affidavit established probable cause, the Court looks only to the four corners of the affidavit. *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016) (citations and quotation marks omitted). More specifically, the magistrate judge "must find that 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence

of a crime will be found in a particular place.'" *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Gates*, 462 U.S. at 236). To meet the nexus requirement of probable cause, "the affidavit supporting the search warrant must demonstrate a nexus between the evidence sought and the place to be searched." *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). To meet this nexus requirement, "the circumstances must indicate why evidence of illegal activity will be found in a particular place." *Carpenter*, 360 F.3d at 594 (citation and internal quotation marks omitted). The affidavit must indicate "that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought, and not merely that the owner of [the] property is suspected of a crime." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006)) (quotation marks omitted) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

In the Recommendation, Judge Ingram concluded that the numerous facts detailed in the warrant affidavit "establish probable cause to believe that evidence of a fraudulent reshipping scheme would be located at the Subject Premises." [R. 55, p. 8]; *see also id.* at 6–8. Dauksys objects to Judge Ingram's findings largely by rehashing the same arguments he made in his motion and reply. *Compare* [R. 60 (objections)], *with* [R. 46 (motion to suppress)], *and* [R. 54 (reply)]. While the Court need not review de novo these rehashed arguments that Judge Ingram has already fully addressed, *see Dundee*, 2020 WL 511520, at *1 (citing *Howard*, 932 F.2d at 509); *Roberts*, 2010 WL 2794246, at *7; *McClain*, 2019 WL 7288768, at *2, to ensure a complete record, the Court will consider the individual arguments Dauksys makes in his objections.

### A.    Objection based on lack of particularity

As stated above, the Supreme Court has held that "a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with

*particularity*." *King*, 563 U.S. at 459 (emphasis added) (citation omitted). This particularity

requirement prevents "the use of general warrants authorizing wide-ranging rummaging searches

that violate the prohibition against unreasonable searches and seizures." *United States v. Hanna*,

661 F.3d 271, 286 (6th Cir. 2011) (internal quotation marks and citation omitted). Thus, "the scope

of a warrant should be confined to evidence relating to a specific crime, supported by probable

cause." *Id.* However, the Sixth Circuit has also noted that

> while a general order to explore and rummage is not permitted, the degree of
> specificity required is flexible and will vary depending on the crime involved and
> the types of items sought. Therefore, a description is "valid if it is as specific as the
> circumstances and the nature of the activity under investigation permit."

*Id.* (quoting *United States v. Greene*, 250 F.3d 471, 477 (6th Cir. 2001)).

In his objections, Dauksys argues for the first time that the warrant lacked the

constitutionally required particularity and consequently permitted the government "a widespread

and generalized exploration." [R. 60, p. 7]. This is not a true objection responding to any of the

findings in Judge Ingram's Recommendation but is instead an entirely new argument for the basis

of the suppression motion. Dauksys never once raises the issue of particularity in either his motion

or reply, but in those briefs solely argued that the warrant lacked probable cause to search the

Subject Premises. *See generally* [R. 46]; [R. 54]. By raising this argument for the first time only

in his objections to Judge Ingram's Recommendation, Dauksys waived this argument. *United*

*States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (finding waiver when the defendant failed to

make his claim before filing his objections); *The Glidden Co. v. Kinsella*, 386 F. App'x 535, 544

n.2 (6th Cir. 2010) (noting that the Sixth Circuit has "indicated that a party's failure to raise an

argument before the magistrate judge constitutes a waiver"); *Houghton v. United States*, No. CV

6:15-090-DCR, 2016 WL 5213923, at *2 (E.D. Ky. Sept. 20, 2016) (citing *Glidden*, 386 Fed.

App'x. at 544 n.2) ("As an initial matter, arguments raised for the first time in objections to a magistrate judge's report are deemed waived.").

Even if this argument was properly raised in Dauksys's motion and had been fully and properly briefed before Judge Ingram issued his Recommendation, the argument fails on the merits. The warrant lists many different items to be seized including records, documents, data, computers, tablets, phones, modems, routers, servers, passwords, notes, envelopes, packages, merchandise with individual serial numbers, safes, and lockboxes. [R. 46-3, pp. 4–9]. These are all items that would logically yield evidence of the alleged reshipping scheme. *See generally* [R. 46-2]. Further, many of these entries explicitly require that the items to be seized relate to the alleged criminal activity. *See, e.g.*, [R. 46-3, p. 5 ("Records or data relating to the fraudulent use of credit cards in connection with the operation of ShipUx LLC.")]. Consequently, the warrant defined the items to be seized with sufficient particularity because it was sufficiently specific to "the circumstances and the nature" of the alleged criminal reshipping scheme under investigation. *Hanna*, 661 F.3d at 286; *see also United States v. Ables*, 167 F.3d 1021, 1034 (6th Cir. 1999) (finding sufficient particularity in a warrant that authorized the "seizure of records tracking the movement of money and/or assets"). Consequently, Dauksys's objection is overruled.

### B.    Objection to a sufficient nexus to search the Subject Premises

Dauksys's main objection is that "the government has failed to establish any legally significant nexus between ShipUx and suspected criminal activity." [R. 60, p. 6]. However, this argument is not a true objection but simply a rehashing of the same argument made in Dauksys's motion. *Compare id.* (objections), *with* [R. 46, pp. 13–15 (motion)]. Dauksys makes several arguments for why probable cause and the nexus requirement are not met. First, he argues that the affidavit "makes no mention of any personal observation of the officers of any suspected criminal

activity coming and going from the ShipUx facility." [R. 60, p. 7]. While this may be true, it ignores the plethora of other evidence tying the criminal reshipping scheme to the Subject Premises. *See generally* [R. 46-2].

Dauksys further argues that "the Magistrate determined that probable cause supported the search despite no proof of criminality associated with an individual at the location." [R. 60, p. 7]. Similarly, Dauksys argues that the statements by the individuals "do not allege or establish that Dauksys or ShipUx employed them, directed them or from whom the items were allegedly stolen." *Id.* at 8. Even accepting this narrative as true, it does nothing to move the needle on the relevant issue at hand: whether there was probable cause that evidence of the reshipping scheme would be found at the Subject Premises. *See Berry*, 565 F.3d at 338 (quoting *Gates*, 462 U.S. at 236) (emphasis added) (stating that the magistrate judge "must find that 'given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a *particular place*.'"). Dauksys's arguments are largely irrelevant to that issue.

Based on the totality of the circumstances, there was more than sufficient evidence establishing a fair probability that evidence was located at the Subject Premises. Approximately 3,464 FedEx parcels were shipped to the Subject Premises during a single-month span, including 167 parcels on one day alone. [R. 46-2, p. 4]. Investigators also tied the Subject Premises to the reshipping scheme along with the Sacramento location, *id.* at 5, at which an approximate combined 11,867 packages were received over a ten-month span, *id.* at 10. FedEx records show that shipments made to the Subject Premises and the connected Sacramento location were tracked by IP addresses based in Russia and Moldova. *Id.* at 25–26. Further, a warranted search of the Sacramento location yielded approximately fifty-five "individually serialized electronic devices without any visible shipping labels." *Id.* at 31. Between the unusual shipment activity at the Subject

Premises, the ties to the other locations where searches had yielded further evidence of the reshipping scheme, and the matching stories from all the interviewed individuals claiming that they shipped packages to the Subject Premise as part of the scheme, there was a sufficient nexus between the Subject Premises and the alleged criminal reshipping activity. Consequently, Dauksys's objection is overruled.

### C.    Objection based on the reliability of the sources in the affidavit

Dauksys's also objects that Judge Ingram "erred by upholding a warrant because the sources of information lacked veracity, reliability and a basis of knowledge." [R. 60, p. 4]. In support of this claim, Dauksys states that Judge Ingram "incorrectly concluded that these unknown individuals support [sic] finding of probable cause." *Id.* at 9. Dauksys continues by citing Sixth Circuit caselaw on the reliability of tips from confidential or unknown sources. *Id.* (citing *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)).

First, and as before, this argument is not a true objection but simply a rehashing of Dauksys's same argument made in his motion. *Compare id.* (objections), *with* [R. 46, pp. 15–16 (motion)]. Further, the twenty individuals in this case are not anonymous or unknown sources. These individuals were twenty of the alleged victims of the reshipping scheme, all of whom were individually interviewed by the FBI. [R. 46-2, pp. 3–4]. While their names are not listed and are simply referred to as "Individual *X*" throughout the affidavit, the common concerns with the veracity and reliability of anonymous or co-conspirator sources are not present with the statements of these individuals. As Judge Ingram correctly notes "the individuals are victims of the schemes, not coconspirators. . . . They were not from any criminal milieu." [R. 55, p. 9]; *see also Griffin v. City of Detroit*, 996 F.2d 1215 (table), 1993 WL 239069, at *5 (6th Cir. June 30, 1993) (quoting *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985), *cert. denied*, 479 U.S. 816 (1986))

("Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen.").

However, even if the court were to apply heightened scrutiny to the statements by these unnamed individuals or even alleged co-conspirators, there is—as Judge Ingram detailed—abundant corroborating evidence supporting their veracity and reliability. "An affidavit . . . that is based on information provided by a confidential informant, prompts us to consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." *United States v. Crumpton*, 824 F.3d 593, 615–16 (6th Cir. 2016) (internal quotation marks omitted) (quoting *Frazier*, 423 F.3d at 532). The twenty individuals all told the same basic story: they were hired by various third-party companies to receive merchandise at their home address, unpack the merchandise, repackage it, and ship it to one of five storage units. [R. 46-2, pp. 3–4]. These individuals were also never paid and never able to reestablish contact with their purported "employers." *Id.* Each of these unconnected individuals' statements are corroborated by the consistent testimony of the others. Moreover, and as Judge Ingram explains, their statements were further corroborated by other notable aspects of the investigation detailed in the affidavit that the Court need not redundantly belabor here. *See generally* [R. 55, pp. 9–10]. As Judge Ingram rightfully points out, "[t]he affidavit was a well-woven tapestry of mutually corroborating evidence." *Id.* at 9. Consequently, Dauksys's objection is overruled.

### D.    Objection based on a reasonable expectation of privacy

At the end of both his motion, [R. 46, p. 16], and his objections to Judge Ingram's Recommendation, [R. 60, p. 12], Dauksys additionally argues that he has a reasonable expectation of privacy in the Subject Premises. Without any development, he simply states that "Dauksys has

also has [sic] a reasonable expectation of privacy in the business premises that were searched." *Id.* This is not a true objection because Judge Ingram's Recommendation acknowledges that fact, *see* [R. 55, p. 10], and it is not developed in any way. *See Members Heritage Credit Union v. N.Y. Marine & Gen. Ins. Co.*, No. 5:21-CV-207, 2023 WL 4876383, at *13 (E.D. Ky. July 31, 2023) (explaining that the party's argument "is wholly undeveloped, and the Court need not consider it"); *Brown v. Astrue*, No. 09-CV-384-HRW, 2010 WL 4878866, at *3 (E.D. Ky. Nov. 24, 2010) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

"The touchstone of the Fourth Amendment is reasonableness." *Rudolph v. Babinec*, 939 F.3d 742, 750 (6th Cir. 2019) (internal citation and quotation marks omitted). Whether a reasonable expectation of privacy exists is not a standalone basis to find a constitutional violation, it is *the* "threshold question" for whether the Fourth Amendment even applies to a given search or seizure. *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) ("The Fourth Amendment protects legitimate expectations of privacy rather than simply places. If the inspection by police does not intrude upon a legitimate expectation of privacy, there is no 'search' subject to the Warrant Clause."). Assuming that Dauksys had a reasonable expectation of privacy in the Subject Premises, as discussed above, the search was made pursuant to a valid warrant supported by probable cause, and thus, comported with the Fourth Amendment. Consequently, Dauksys's objection is overruled.

### E.    Objection to the good faith exception

Dauksys also objects to Judge Ingram's finding that even if the warrant failed to establish probable cause, the good faith exception would save the search from the exclusionary rule. [R. 60,

pp. 10–13]. The purpose of the exclusionary rule is to deter police misconduct rather than punish the errors of magistrates. *United States v. Leon*, 468 U.S. 897, 916 (1984). As the costs of exclusion are high, it is only an appropriate remedy when the deterrence benefits outweigh those costs. *Davis v. United States*, 564 U.S. 229, 238 (2011). This occurs when police exhibit "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.* (internal quotations omitted).

The good faith exception to the exclusionary rule does not bar from admission evidence seized in a "reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019) (quoting *Leon*, 468 U.S. at 905). As Judge Ingram articulated, the good faith inquiry is confined to "the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n.23. Accordingly, one instance where the good faith exception is inapplicable—and the one that Dauksys argues—is where the affidavit supporting the search warrant is "bare bones," such that it "merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *Id.* (internal quotations omitted). The conclusion that the officers' reliance on the warrant was objectively reasonable requires a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause. *Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). Concerning an alleged lack of nexus, for the good-faith exception to apply, an affidavit need only present "*some* connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (alteration in original) (quotation marks omitted) (quoting *Laughton*, 409 F.3d at 749–50).

Dauksys claims that Judge Ingram erred in finding that the affidavit was not bare bones because (1) "the sources of information for the affidavit lacked veracity, reliability, and basis of knowledge," and (2) the affidavit was "so lacking indicia of probable cause as to render official belief in its existence entirely unreasonable." [R. 60, p. 11]. Defense counsel also stated in reply that "the good faith exception does not apply as the affidavit is 'bare bones.'" [R. 54, p. 10]. The forty-one-page affidavit is hardly "bare bones" and calling it so makes the Court question the extent that defense counsel actually reviewed the affidavit. The lengthy affidavit details the FBI's extensive findings throughout their years of investigation into this broad reshipping scheme, including the individual interviews with the twenty different "reshippers." *See generally* [R. 46-2]. For all the same reasons stated above that the warrant was based upon probable cause using reliable evidence and with a sufficient nexus tying the Subject Premises to the alleged criminal activity, the affidavit alleged sufficient facts to make any officers' reliance on the warrant objectively reasonable. The Court is unpersuaded by Dauksys's objection to Judge Ingram's application of the good faith exception. Consequently, Dauksys's objection is overruled.

Dauksys has not met his burden of showing that his constitutional rights have been violated, *see Richards*, 659 F.3d at 536, and his motion to suppress must be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate Judge's Recommended Disposition and overrules Dauksys's objections. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Magistrate Judge Ingram's Recommended Disposition, [**R. 55**], is **ADOPTED** as the Opinion of the Court.

2. Dauksys's Objections, [**R. 60**], to the Recommended Disposition are **OVERRULED**.

3.  Dauksys's Motion to Suppress, [**R. 46**], is **DENIED**.

This the 25th day of November, 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY